## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## MONROE DIVISION

**RUDOLPH WASHINGTON**                              **CIVIL ACTION NO. 3:13-cv-0217**
    **LA. DOC #308049**

                                            **SECTION P**

**VS.**

                                            **JUDGE ROBERT G. JAMES**

**MAJOR TUBBS AND**
**LT. COLEMAN**                                    **MAGISTRATE JUDGE HAYES**

## REPORT AND RECOMMENDATION

      Before the undersigned Magistrate Judge, on reference from the District Court, is a Motion

for Judgment as a Matter of Law, [doc. # 100], filed by Defendant Major Tubbs.  For reasons set

forth below, it is recommended that the Motion be **GRANTED** or that, in the alternative,

Judgment be **GRANTED** in favor of the Defendant on the basis of all of the facts and evidence

elicited at the hearing on this case.

## Background

      On January 24, 2013, Plaintiff Rudolph Washington, an inmate at the Bossier Medium

Security Facility, filed the instant *pro se* civil rights complaint under 42 U.S.C. § 1983 against

Major Tubbs (incorrectly named in the complaint as "Major Tubls") and Lieutenant Michael

Coleman.  [doc. # 1].  Plaintiff alleged that on August 29, 2012, while he was incarcerated at the

Richwood Correctional Center (RCC), he was the victim of excessive force at the hands of the

two named Defendants.  *Id.* at 3.  He alleged that Lt. Coleman handcuffed him and that Major

Tubbs then sprayed his eyes with pepper spray.  *Id.*  Plaintiff also alleged that Defendants denied

him adequate medical attention for his damaged eyes from August 29, 2012, through September 5,

2012, and that Defendants refused to return his personal property after they transferred him from

RCC to the Jackson Parish Correctional Center ("JPCC") on September 5, 2012.  *Id.* at 4.

On June 2, 2014, the District Court dismissed Plaintiff's complaint against Defendant Coleman in its entirety and dismissed Plaintiff's claims against Defendant Tubbs for failure to provide medical care and for loss of property.  [doc. # 85].  Plaintiff's excessive force claim against Defendant Tubbs remains.  *Id.*[1]

The Court scheduled the matter for an evidentiary hearing, pursuant to 28 U.S.C. § 636(b)(1)(B) and *Flowers v. Phelps*, 956 F.2d 488 (5th Cir. 1992), *modified on other grounds*, 964 F.2d 400 (5th Cir. 1992), on June 2, 2014.  [doc. # 86].  On July 17, 2014, Plaintiff filed a Pretrial Memorandum and listed twelve witnesses that he planned to call.  [doc. # 97].  On July 22, 2014, however, the Court issued an Order informing Plaintiff that, because he failed to follow the Court's instructions, his incarcerated witnesses would not be present at the hearing and his unincarcerated witnesses would not be served by the Marshal's service.  [doc. # 99].

The Court held the evidentiary hearing on July 28, 2014.  Defendant moved for a judgment as a matter of law at the close of Plaintiff's case, which the court took under advisement. Defendant then presented his evidence and rested.  The matter is now before the Court.

### Hearing Testimony and Evidence

At the hearing, the Court heard testimony from Lieutenant Coleman, Major Tubbs, Nurse Myra Russ, Deputy Warden Dave Yelverton, and Plaintiff Rudolph Washington.[2]  [doc. # 103].

--------------------------------------------------

[1] Neither party demanded a jury trial.

[2] Plaintiff expressed an interest in calling additional witnesses at the hearing but the Court informed him again that he had failed to properly subpoena them.  The Court explained to Plaintiff that it clearly instructed him regarding the necessary process to secure the witnesses' presence.  *Id.*  Yet, he failed to comply.  [*See* doc. # 99].  The Court denied Plaintiff's request for a continuance.

The Court also received into evidence, without objection, the following exhibits introduced by

Defendant:

      (1) Booking Report from Richwood Correctional Center

      (2) Booking Sheet from Jackson Parish Correctional Center

      (3) Color Photograph from booking at Jackson Parish Correctional Center

      (4) Booking Medical Sheet from Jackson Parish Correctional Center

      (5) Inmate Medical History Report from the Orleans Parish Sheriff's Office

      (6) Inmate Request Form and Response

      (7) Five Jackson Parish Correctional Center Disciplinary Reports

      (8) Richwood Correctional Center Nurse's Notes

      (9) Richwood Correctional Center Unusual Occurrence Report

      (10) Labels of Petitioner's Medications

[doc. # 102]. The relevant testimony of each witness is summarized below.

<u>Lieutenant Michael Coleman</u>

      Lieutenant Coleman testified that he sprayed Plaintiff with a chemical agent on the date of

the incident. He stated that he first observed Plaintiff in an unauthorized area and ordered

Plaintiff to go to his assigned unit. Plaintiff refused and "became combative and hostile with a

clenched fist . . . ." As a result, Coleman administered a burst of chemical agent to Plaintiff's

chest area. Coleman stated that spraying the chemical agent towards an inmate's chest area is "the

normal procedure."

      After spraying Plaintiff, Coleman placed Plaintiff in restraints and escorted him to the

nurse's station. The nurse attempted to flush Plaintiff's eyes but Plaintiff refused to cooperate in

3

the procedure.  Plaintiff then showered, donned clean clothing, and was escorted to a cell.

At one point, Plaintiff attempted to establish that Coleman had a cousin who worked at RCC who shared the Coleman surname.  Michael Coleman denied any relationship to the other Coleman.

### Major Tubbs

Major Tubbs is the Chief of Security at RCC.  On the day of the incident, Tubbs heard a disturbance while he was sitting in his office, so he proceeded to the hallway to investigate. Tubbs stated that he approached Plaintiff but did not spray Plaintiff with a chemical agent. Rather, Tubbs testified that Lieutenant Coleman sprayed Plaintiff.  He also stated that Plaintiff's hands were not handcuffed when Coleman sprayed Plaintiff, they were "clenched" in front of his body.

### Nurse Myra Russ

Russ testified that she attempted to treat Plaintiff after the incident.  The normal procedure for flushing a chemical agent from an individual's eyes, according to Russ, is to tilt the individual's head back or sometimes to instruct the individual to lean forward.  She attempted to flush Plaintiff's eyes but Plaintiff refused all treatment.  Plaintiff left the medical facility to take a shower.

### Plaintiff Rudolph Washington

Plaintiff first testified that, on the day of the incident, Lieutenant Coleman ordered him to go to his assigned unit and Plaintiff complied.  Coleman then handcuffed Plaintiff.  Major Tubbs exited his office, approached Plaintiff, and sprayed Plaintiff in the eyes with pepper spray.  Major Tubbs and Lieutenant Coleman escorted Plaintiff to the nurses' station where Nurse Russ poured

4

a chemical agent into Plaintiff's eyes against his will.  Tubbs and Coleman then escorted Plaintiff to the shower.

Plaintiff testified that the next day, and throughout the week, his eyes were red, puffy, fuzzy, foggy, blurry, swollen, and looked as if he had been stung by a wasp.  The chemical agent that Major Tubbs administered burned Plaintiff's eyes.  Major Tubbs threatened to spray Plaintiff again several days after the incident.  Subsequently, Plaintiff was transferred to JPCC.  Upon arrival, he filled out a medical request and complained that his eyes were damaged.  Correctional center officials transported Plaintiff to Conway Hospital for treatment and the hospital officials informed Plaintiff that he had glaucoma and was losing his eyesight.  Despite that testimony, however, the defense introduced a JPCC booking document revealing that Plaintiff did not inform JPCC staff of any eye injuries.  [doc. # 102-1, p. 4-5].  Plaintiff explained that JPCC staff simply failed to record his statements on the document. The booking photograph from JPCC does not support the plaintiff's claims regarding redness, puffiness, or any other visible signs of injury to his eyes.

On cross-examination, Plaintiff testified that he had been convicted of unauthorized use of a motor vehicle and burglary.  Defense counsel asked Plaintiff if he was convicted of anything else and Plaintiff replied, no.  Defense counsel showed Plaintiff his RCC Booking Report and asked Plaintiff, "Isn't it true that you were in jail for four felonies, simple burglary of an inhabited dwelling, theft, unauthorized use of a motor vehicle, and unauthorized entry into a business?"  *Id.* at 1.  Plaintiff responded in the affirmative.  Plaintiff also answered in the affirmative when asked whether Tubbs caused Plaintiff to serve an additional 120 days in prison.

Plaintiff applied to be a trustee multiple times while at RCC.  Major Tubbs denied his

applications because he was a seven-time felony offender.  According to Plaintiff, Major Tubbs was "being unfair."  Nevertheless, one official, *Captain* Coleman did promise to grant Plaintiff trustee status.  Plaintiff stated that he believed Captain Coleman and Lieutenant Coleman were related because they share a surname.

Next, Plaintiff examined a document that defense counsel introduced that indicated Plaintiff suffered from eye complications prior to the incident at issue.  Plaintiff then acknowledged that, prior to the incident, he informed RCC staff that he needed reading glasses because his eyes were "not what they used to be."  *Id.* at 8.  Finally, Plaintiff testified that officials at JPCC sprayed him with a chemical agent three additional times following the incident in question and that some of it contacted his eyes.  Plaintiff produced no medical records or reports that in any way support his claim that his later diagnosed glaucoma was related to the pepper spray incident at issue in this case, or that support a claim that pepper spray can even cause glaucoma.

<u>Dave Yelverton</u>

Mr. Yelverton is the deputy warden at JPCC.  He testified that he is familiar with Plaintiff and that he is unaware of Plaintiff ever being hostile or combative.  However, on cross-examination, and after reading several disciplinary reports that defense counsel presented, Yelverton testified that Plaintiff  violated rules prohibiting defiance, disobedience, aggravated disobedience, theft, and unauthorized entry while at JPCC.  *Id.* at 10-14.

**<u>Law and Analysis</u>**

"An evidentiary hearing consistent with *Flowers v. Phelps* amounts to a bench trial replete with credibility determinations and findings of fact."  *Adkins v. Kaspar*, 393 F.3d 559, 563 (5th

Cir. 2004) (citations and internal quotation marks omitted).  "A civil plaintiff seeking to recover

damages for use of excessive force must prove his claim by a preponderance of the evidence."

*Yarrito v. Cook*, 1995 WL 17788756, at *5 (5th Cir.  June 22, 1995) (unpubl.) (citation omitted).

"Preponderance" means that it is more likely so than not.  *Matter of Briscoe Enterprises, Ltd.,*

*II*, 994 F.2d 1160, 1164 (5th Cir. 1993) (citation omitted).  It remains within the province of the

finder of fact to weigh conflicting evidence and inferences and to determine the credibility of

witnesses.  *See Yarrito*, *supra*.

     Here, Defendant moved for a judgment as a matter of law at the close of Plaintiff's

presentation of evidence.  [doc. # 100].  In a bench trial, "the appropriate vehicle for dismissing a

case as a matter of law at the close of a plaintiff's evidence is a Rule 52(c) judgment on partial

findings."  *Weber v. Gainey's Concrete Products, Inc.*, 1998 WL 699047, n.1 (5th Cir. Sept. 21,

1998) (unpubl.) (citation omitted).  Rule 52 provides in pertinent part:

> **Judgment on Partial Findings**. If a party has been fully heard on an issue during a
> nonjury trial and the court finds against the party on that issue, the court may enter
> judgment against the party on a claim or defense that, under the controlling law, can
> be maintained or defeated only with a favorable finding on that issue. The court may,
> however, decline to render any judgment until the close of the evidence. A judgment
> on partial findings must be supported by findings of fact and conclusions of law as
> required by Rule 52(a).

Fed. R. Civ P. 52(c).  When deciding a case pursuant to Rule 52(c), the court is not required to

make any special inferences or construe the facts in the light most favorable to a plaintiff.  *Weber,*

*supra*.

     Here, as stated, Plaintiff's sole remaining claim is that Defendant Tubbs utilized excessive

force.  When a prison official is accused of using excessive physical force in contravention of the

Eighth Amendment's Cruel and Unusual Punishments Clause, the core judicial inquiry is

"whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6 (1992) (citing *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986)).  However, not every malevolent touch by a prison guard gives rise to a federal cause of action.  *Id.* (citation omitted).  The Eighth Amendment does not protect against "*de minimis*" use of physical force, so long as the use of force is not of a sort "repugnant to the conscience of mankind."  *Id.*  (citation and internal quotation marks omitted).[3] In considering an excessive force claim, courts consider the following factors: (1) the extent of the injury suffered; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any effort made to temper the severity of a forceful response.  *Gomez v. Chandler*, 163 F.3d 921, 923 (5th Cir. 1999).

The threshold issue is whether Major Tubbs sprayed Plaintiff with the chemical agent or whether Lieutenant Coleman sprayed Plaintiff.  At the hearing, and as recounted above, Coleman testified that he sprayed Plaintiff.  Major Tubbs likewise testified that Coleman sprayed Plaintiff. Only Plaintiff claims that Major Tubbs sprayed him.  However, Plaintiff failed to support this allegation with any evidence.  Thus, this issue hinges on credibility alone.

The Court first observes that Plaintiff is a multiple felony offender.  Moreover, Plaintiff testified inconsistently at the hearing when defense counsel asked him about his prior felony

---

[3]  The PLRA further provides, "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act . . . ."  42 U.S.C.A. § 1997e(e).  The Fifth Circuit has equated Section 1997e(e)'s "physical injury" requirement with the standard used under the Eighth Amendment; that is, an injury that is more than *de minimis*, but not necessarily significant.  *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997).

convictions.  Defense counsel also discredited Plaintiff's claim that he informed the JPCC booking staff that he had injuries to his eyes.  As mentioned above, defense counsel introduced a booking document revealing that Plaintiff did not inform JPCC staff of any eye injuries.  [doc. # 102-1, p. 4-5].  In addition, contrary to the plaintiff's deposition testimony, the booking photograph of the plaintiff fails to support his claim that his eyes were swollen, red or otherwise showed signs of injury at the time he was booked into JPCC.  What is more, it appears that Plaintiff had a motive to accuse Major Tubbs of excessive force, as opposed to Lieutenant Coleman, because Plaintiff believed that Lieutenant Coleman was related to the only individual that Plaintiff thought could help him become a trustee: Captain Coleman.  In addition, Plaintiff stated that Major Tubbs treated him unfairly when he rejected several of Plaintiff's trustee applications and when he caused Plaintiff to serve an additional 120 days in prison.

Considering the foregoing, the Court cannot credit Plaintiff's version of events, and finds that Lieutenant Coleman, not Major Tubbs, sprayed Plaintiff.[4]  Consequently, the Court cannot find that Major Tubbs, the sole remaining Defendant, utilized excessive force because Tubbs did not use any force at all.

Even assuming, *arguendo*, that Tubbs had sprayed Plaintiff, the Court cannot credit Plaintiff's allegations concerning the circumstances surrounding the use of force and, in that respect, would find that both Lieutenant Coleman and Major Tubbs responded to Plaintiff's actions with the minimal level of force necessary to subdue a combative inmate. The Court finds

---

[4] In fact, Plaintiff answered in the affirmative when defense counsel asked Plaintiff, "Now, at the time that you were sprayed by *Lieutenant Coleman*, you still believed that Captain Coleman was Lieutenant Coleman's relative?"  Although, to be sure, Plaintiff may have simply failed to notice counsel's subtle ploy and, consequently, may have only been referring to the latter portion of the question when he proffered his answer.

9

that the use of force was justified and reasonable, and that Plaintiff failed to prove any significant injury sustained as a result of the pepper spray.

### Conclusion

The Court emphasizes that Plaintiff has the burden of proving his case by a preponderance of the evidence.  In that regard, Plaintiff's inconsistent, conclusory, and unsupported testimony does not persuade the Court that his version of events is more likely so than not so.  Plaintiff has not established that Defendant Tubbs violated his Eighth Amendment protections against the use of excessive force.  For the foregoing reasons,

**IT IS RECOMMENDED** that the Motion for Judgment on Partial Findings, [doc. # 100], filed by Defendant Major Tubbs, be **GRANTED** and that judgment be entered in favor of Defendant, thereby **DISMISSING** Plaintiff's complaint in its entirety, with prejudice.  In the alternative, based on all of the testimony and evidence elicited at trial, **IT IS RECOMMENDED** that Judgment be entered in favor of Defendant, thereby **DISMISSING** Plaintiff's complaint in its entirety, with prejudice.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this Recommendation have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy of any objections or response to the District Judge at the time of filing. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED**

10

**FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, Monroe, Louisiana, this 20th day of August, 2014.

KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE